UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| R. ALEXANDER ACOSTA,<br>Secretary of Labor, United States Department<br>Of Labor<br><br>Plaintiff,<br><br>v.<br><br>UNITED TRANSPORTATION UNION, *et al.*<br><br>Defendants. | Case No. 1:17-cv-923<br>Judge: Solomon Oliver, Jr. |

## ANSWER TO PLAINTIFF'S COMPLAINT BY DEFENDANTS THE SMART GROUP VSTD PLAN, JOSEPH SELLERS, RICHARD MCCLEES, JOHN PREVISICH, AND JOSEPH NIGRO

Defendants, The SMART Group VSTD Plan, Joseph Sellers, Richard McClees, John Previsich, and Joseph Nigro, by and through their undersigned counsel, respond to the Complaint of Plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor ("DOL") as follows. Set forth below are Defendants' responses to each of those paragraphs in the DOL's Complaint followed by Defendants' affirmative defenses to the Complaint. Unless otherwise noted herein, the term "Plan" shall refer to the SMART Group VSTD Plan and its predecessor, the UTU Group Voluntary Short Term Disability Plan, and the term "Union" shall refer to the International Association of Sheet Metal Air, Rail, Transportation Workers ("SMART") and its predecessor, the United Transportation Union ("UTU").

### DEFENDANTS' PRELIMINARY STATEMENT

The DOL has filed suit against the SMART Group VSTD Plan, the Union that created the Plan to provide short term disability benefit to its members, and various

officers of the Union who served as trustees of the Plan. The DOL's claims center on allegations that the Plan made payments to the Union to provide administrative services for the Plan ("Administrative Expenses"). The DOL's claims are based on payments of these Administrative Expenses during two time periods: (1) from January 1, 2010 through December 31, 2013; and (2) from January 1, 2014 through the present.

With respect to the first time period, the DOL alleges that the Plan's trustees and the Union breached their fiduciary duties and engaged in prohibited transactions under ERISA in allowing the payments of Administrative Expenses to be made to the Union without a written agreement in place as to what administrative services would be provided and without engaging in any due diligence as to the reasonableness of the charges. The claims based on this time period largely do not involve the Defendants who are now answering the Complaint. Regardless, as the facts in discovery will show, these claims are legally baseless. The payment of Administrative Expenses did not constitute a transfer of plan assets as the DOL has alleged. Plan participants paid a specified amount of their post-tax wages as the premiums for the short-term disability benefits provided under the Plan. The Plan was specifically designed so that a portion of the premium payment was to be paid to the Union as payment for the Administrative Expenses. Thus, the Administrative Expenses were never the property of the Plan. Because ERISA provides that the determination of plan assets is made based on ordinary notions of property rights, the Administrative Expenses were not plan assets within the meaning of ERISA. Therefore, the Defendants were not acting as fiduciaries with respect to the payment of the Administrative Expenses.

With respect to the second time period, the DOL acknowledges that the Plan and the Union executed an administrative services agreement ("ASA") that set forth the terms of the administrative services provided by the Union and the Plan's payments for those services. However, the DOL claims that this was not a "reasonable arrangement," and therefore resulted in breaches of fiduciary duties and prohibited transactions under ERISA, because the Plan's trustees allegedly did not engage in due diligence with respect to the reasonableness of the fees charged under the ASA. These conclusory allegations omit several critical facts. In January 2014, when the Plan's new board of trustees was installed, the board retained an independent fiduciary and delegated to him the fiduciary responsibility to, among other things: (a) evaluate whether the payments of the Administrative Expenses are reasonable and necessary expense of the Plan within the meaning of ERISA Section 408(b)(2); and (b) negotiate an administrative services agreement between the Plan and the Union. Based on the responses to the requests for proposals (RFPs) that the independent fiduciary solicited from several third-party administrators, he determined that the Union's costs of administering the Plan were significantly lower than what the other service providers he solicited had proposed and that the Administrative Expenses were appropriate and reasonable expenses to operate the Plan. He presented these findings to the board both at a trustees' meeting and in a report. He then negotiated the ASA between the Plan and the Union. Effective January 1, 2014, all payments of Administrative Expenses were made pursuant to the ASA. Thus, none of the Defendants answering this Complaint acted as fiduciaries with respect to any of the payments of Administrative Expenses that form the basis of DOL's claims arising from this time period. Additionally, the payments of the Administrative Expenses made

pursuant to the ASA fall within the prohibited transaction exemption under ERISA Section 408(b)(2) because the services provided by the Union were necessary for the administration of the Plan and the payments made for those services were reasonable as supported by the findings of the independent fiduciary.

## DEFENDANTS' RESPONSES TO PLAINTIFF'S ALLEGATIONS

1. **Response:** Defendants admit to the existence of the statutes cited in paragraph 1. The remaining allegations in this paragraph set forth legal conclusions to which no response is required. To the extent they contain any allegations of fact, they are denied.

2. **Response:** Defendants admit to the existence of the statutes cited in paragraph 2. The remaining allegations in this paragraph set forth legal conclusions to which no response is required. To the extent they contain any allegations of fact, they are denied.

3. **Response:** Defendants admit to the existence of the statutes cited in paragraph 3. Defendants further admit that the Plan is administered in Cuyahoga County, Ohio, which is located within the Northern District of Ohio. The remaining allegations in this paragraph set forth legal conclusions to which no response is required. To the extent they contain any allegations of fact, they are denied.

## DEFENDANTS

4. **Response:** Defendants admit that UTU continued in existence until January 1, 2012, the effective date of its merger into SMART. Defendants further admit the remaining allegations in paragraph 4 to the extent they are consistent with the foregoing admission.

5. **Response:** The allegations in the first sentence of paragraph 5 are admitted. The allegations in the second sentence are denied. Defendants further state that the UTU

VSTD Plan was not funded through payroll withholdings from participants' paychecks. Rather, Plan participants paid a specified amount of their post-tax wages as the premiums for the short-term disability benefits provided under the Plan.  The Plan was specifically designed so that a portion of the premium payment was to be paid directly to the Union as payment for the Administrative Expenses.  Thus, the Administrative Expenses were never the property of the Plan and were not plan assets under ERISA.

6.      **Response:** Defendants admit to the existence of the statutes cited in paragraph 6. The remaining allegations in this paragraph set forth legal conclusions to which no response is required.  To the extent they contain any allegations of fact, they are denied.

7.      **Response:** The allegations in paragraph 7 are denied.

8.      **Response:** The merger agreement between UTU and SMWIA provided for the continuation of the work that had been done by UTU in a division of SMART called the Transportation Division, which is a separate division of SMART, but is not separately incorporated or otherwise organized. The Transportation Division has remained in North Olmsted, Ohio, but pursuant to the terms of the merger agreement may be relocated with the approval of SMART's General Executive Council.

9.      **Response:** The merger agreement between UTU and SMWIA provided for the continuation of the work that had been done by UTU in a division of SMART called the Transportation Division, which is a separate division of SMART, but is not separately incorporated or otherwise organized.

10.     **Response:** Admitted.

11.     **Response:** Defendants deny the allegations in the first sentence of paragraph 11. Defendants further state that the Plan was not funded through payroll withholdings that

5

were withheld from participants' paychecks. Rather, Plan participants paid a specified amount of their post-tax wages as the premiums for the short-term disability benefits provided under the Plan. The Plan was specifically designed so that a portion of the premium payment was to be paid to the Union as payment for the Administrative Expenses. Thus, the Administrative Expenses were never the property of the Plan and were not plan assets under ERISA. Regarding the allegations in the second sentence of this paragraph, Defendants admit to the existence of the statutes cited in this paragraph, however, the remaining allegations in this sentence set forth legal conclusions to which no answer is required; to the extent this sentence contains any allegations of fact, they are denied.

12. **Response:** The allegations in paragraph 12 set forth legal conclusions to which no response is required. Defendants further deny that Plaintiff is entitled to the relief sought. To the extent this paragraph contains any allegations of fact, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

13. **Response:** The allegations in paragraph 13 set forth legal conclusions to which no answer is required. To the extent this paragraph contains any allegations of fact, they are denied.

14. **Response:** The allegations in paragraph 14 set forth legal conclusions to which no answer is required. To the extent this paragraph contains any allegations of fact, they are denied.

15. **Response:** The allegations in paragraph 15 regarding the trustees' status as "Plan's Administrator" sets forth legal conclusions to which no response is required. To the extent this paragraph contains any allegations of fact, they are denied.

16. **Response:** It is admitted that John Previsich has served as the President of the Transportation Division of SMART since April 29, 2013. Previsich became a trustee of the Plan on the same date. The remaining allegations in paragraph 16 set forth legal conclusions to which no response is required. To the extent they contain any allegations of fact, they are denied.

17. **Response:** It is denied that Joseph Sellers has been the General President of SMART since January 14, 2014. Effective January 15, 2014, Joseph Sellers became a trustee of the Plan. The remaining allegations in paragraph 17 set forth legal conclusions to which no answer is required. To the extent they contain any allegations of fact, they are denied.

18. **Response:** It is denied that Richard McClees has been the General Secretary and Treasurer of SMART since January 14, 2014. Effective January 15, 2014, Richard McClees became a trustee of the Plan. The remaining allegations in paragraph 18 set forth legal conclusions to which no response is required. To the extent they contain any allegations of fact, they are denied.

19. **Response:** Malcolm Futhey held himself out to be the General President of the UTU from January 1, 2008 through December 31, 2012. Futhey became President of the Transportation Division of SMART on January 1, 2012, and retired from that position on October 1, 2013. Futhey was replaced as a trustee of the SMART Group VSTD Plan on January 15, 2014. The remaining allegations in paragraph 19 set forth legal conclusions

7

to which no answer is required.  To the extent they contain any allegations of fact, they are denied.

20.     **Response:** It is denied that Joseph Nigro was the President of the Union from July 2011 through April 2015.  It is denied Nigro was the named Plan Administrator of the Plan from January 29, 2014 through June 1, 2015.  The remaining allegations in paragraph 20 set forth legal conclusions to which no response is required.  To the extent they contain any allegations of fact, they are denied.

## GENERAL ALLEGATIONS

21.     **Response:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21.

22.     **Response:** Based on the vague wording of the phrase "During the relevant period," Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 22.  However, Defendants admit that for many years, the Union has employed field supervisors, who perform a number of functions, with their primary work being to market the benefit programs offered by the Union and the UTUIA to Union members, helping members to understand the nature and rules of these programs and products, and assisting members with claims for benefits.  They are rarely involved in doing organizing work for SMART.  Defendants deny the remaining allegations in paragraph 22 to the extent they are not consistent with the foregoing admissions.

23.     **Response:** In response to the allegations in paragraph 23, Defendants incorporate their answer to Paragraph 22 of the Complaint.

24. **Response:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24.

25. **Response:** Defendants deny the allegations in paragraph 25.

26. **Response:** Defendants deny the allegations in paragraph 26.

27. **Response:** Defendants deny the allegations in paragraph 27. Defendants further state that, effective January 1, 2014, treasurers who were employed by the local unions, district councils and legislative boards, received payments for services rendered to the Plan in accordance with the Administrative Services Agreement.

28. **Response:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 28.

29. **Response:** The allegations in the first two sentences of paragraph 29 are denied. Defendants further state that the post-tax wages that Plan participants paid as the premiums for the short-term disability benefits provided under the Plan were not all contributions to the Plan. The Plan was specifically designed so that a portion of the premium payment was to be paid to the Union as payment for the Administrative Expenses. Thus, the Administrative Expenses were never contributions to the Plan, or the property of the Plan and were not plan assets under ERISA. The allegations in the third sentence of this paragraph set forth legal conclusions to which no response is required. To the extent they contain any allegations of fact, they are denied.

30. **Response:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 30.

31. **Response:** Denied. Defendants further state that Plan participants paid a specified amount of their post-tax wages as the premiums for the short-term disability

benefits provided under the Plan. The Plan was specifically designed so that a portion of the premium payment was to be paid to the Union as payment for the Administrative Expenses. Thus, the Administrative Expenses were never the property of the Plan and were not plan assets under ERISA.

32. **Response:** Denied.

33. **Response:** Denied.

34. **Response:** Denied.

35. **Response:** Denied. Defendants further state that the independent fiduciary determined that the Administrative Expenses paid during this period were appropriate and reasonable expenses for administering the Plan.

36. **Response:** Denied.

37. **Response:** Denied.

38. **Response:** Denied. Defendants further state that the Administrative Expenses were not retained by the Union from participant contributions. The Plan was specifically designed so that a portion of the premium payment was to be paid to the Union as payment for the Administrative Expenses. Thus, the Administrative Expenses were never contributions to the plan, or the property of the Plan and were not plan assets under ERISA.

39. **Response:** Denied.

40. **Response:** Denied.

41. **Response:** Denied.

42. **Response:** Admitted that members of the Plan's board of trustees had a time study conducted to determine the amount of time Union employees spent on Plan-related

activities. The allegations in paragraph 42 regarding the trustees status as "fiduciaries" sets forth legal conclusions to which no response is required. To the extent they contain any allegations of fact, they are denied.

43. **Response:** Admitted.

44. **Response:** Defendants admit to the existence of the Administrative Services Agreement between the Plan and SMART, which was negotiated and executed on the Plan's behalf by an independent fiduciary retained by the Plan. However, the allegations in paragraph 44 are denied in that they inaccurately paraphrase the terms of the Agreement.

45. **Response:** Denied. Defendants further state that any payments made after January 1, 2014 were made pursuant to the authorization and direction of the independent fiduciary and in accordance with the Administrative Services Agreement.

46. **Response:** The allegations in paragraph 46 regarding "reasonableness of fees" set forth legal conclusions to which no response is required. To the extent this paragraph contains any allegations of fact, they are denied. Defendants further state that the trustees delegated their responsibility to engage in due diligence with respect to the reasonableness of the fees charged to the independent fiduciary, who conducted a thorough investigation of the relevant market by soliciting RFPs from several third-party administrators and determined on the basis of his investigation that the Administrative Expenses were appropriate and reasonable expenses for administering the Plan.

47. **Response:** Denied.

48. **Response:** The allegations in paragraph 48 regarding the trustees status as "Plan Administrator" sets forth legal conclusions to which no response is required.

To the extent this paragraph contains any allegations of fact, they are denied.

49. **Response:** The allegations in paragraph 49 regarding "reasonableness of fees" set forth legal conclusions to which no response is required. To the extent this paragraph contains any allegations of fact, they are denied. Defendants further state that the trustees delegated their responsibility to engage in due diligence with respect to the reasonableness of the fees charged to the independent fiduciary, who conducted a thorough investigation of the relevant market by soliciting RFPs from several third-party administrators and determined on the basis of his investigation that the Administrative Expenses were appropriate and reasonable expenses for administering the Plan.

50. **Response:** Denied.

51. **Response:** The allegations in paragraph 51 set forth legal conclusions to which no response is required. To the extent this paragraph contains any allegations of fact, they are denied.

52. **Response:** The allegations in paragraph 52 set forth legal conclusions to which no response is required. To the extent this paragraph contains any allegations of fact, they are denied.

53. **Response:** The allegations in paragraph 53 set forth legal conclusions to which no answer is required. To the extent this paragraph contains any allegations of fact, they are denied.

54. **Response:** The allegations in paragraph 54 set forth legal conclusions to which no answer is required. To the extent this paragraph contains any allegations of fact, they are denied.

55. **Response:** The allegations in paragraph 55 set forth legal conclusions to which no answer is required. To the extent this paragraph contains any allegations of fact, they are denied.

56. **Response:** The allegations in paragraph 56 set forth legal conclusions to which no answer is required. To the extent this paragraph contains any allegations of fact, they are denied.

57. **Response:** The allegations in paragraph 57 set forth legal conclusions to which no answer is required. To the extent this paragraph contains any allegations of fact, they are denied.

58. **Response:** The allegations in paragraph 58 set forth legal conclusions to which no answer is required. To the extent this paragraph contains any allegations of fact, they are denied. Further, Defendants deny that Plaintiff is entitled to the relief sought.

## PRAYER FOR RELIEF

59. **Response:** No response is required to the request for relief set forth in paragraph 59. However, Defendants deny that Plaintiff is entitled to the relief sought or any relief.

## AFFIRMATIVE DEFENSES

1. Defendants deny all allegations not expressly admitted.

2. Plaintiff's claim is barred, in part or in whole, by the statute of limitations.

3. Plaintiff has failed to state a claim upon which relief can be granted.

4. Plaintiff's claims are barred by the doctrine of waiver.

5. Plaintiff's claims are barred by estoppel.

## RESERVATION OF RIGHTS

Defendants reserve the right to plead any additional, separate defenses, which may come to light as the action progresses.

WHEREFORE, having fully answered the Complaint, Defendants respectfully request that the same be dismissed and request such other and further relief to Defendants as the Court deems just and proper.

Respectfully submitted,

/s/ Timothy Gallagher
Timothy Gallagher (0058401)
Schwarzwald McNair & Fusco LLP
1215 Superior Avenue, Suite 225
Cleveland, OH 44114-3257
(216) 566-1600 ext. 141 phone
(216) 566-1814 fax
tgallagher@smcnlaw.com

Local Counsel for the Defendants The SMART Group VSTD Plan, Joseph Sellers, Richard McClees, John Previsich, and Joseph Nigro

And,

/s/ *Alexander M. Gormley*
Marc H. Rifkind (*pro hac vice admission granted*)
Alexander M. Gormley (*pro hac vice admission granted*)
Slevin & Hart, P.C.
1625 Massachusetts Ave., NW, Suite 450
Washington, DC 20036
(202) 797-8700 phone
(202) 234-8231 fax
mrifkind@slevinhart.com
agormley@slevinhart.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of October 2017, the foregoing Answer to Plaintiff's Complaint was electronically filed. Notice of this filing will be sent to all parties who have appeared by operation of the Court's electronic filing system. All parties may access this filing through the Court's electronic filing system.

                                              */s/ Alexander M. Gormley*
                                              Attorney for Defendants The SMART Group VSTD Plan, Joseph Sellers, Richard McClees, John Previsich, and Joseph Nigro

20558812v1