UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SECRETARY OF THE DEPARTMENT OF LABOR, | ) | Case No: 1:17 CV 923 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| UNITED TRANSPORTATION UNION, *et al.*, | ) | |
| | ) | ORDER |
| Defendants | ) | |

Currently pending before the court is the Joint Motion for Partial Summary Judgment ("Joint Motion") (ECF No. 32) filed by Defendants International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART"), the SMART Group VTSD Plan, John Previsich, and Joseph Nigro (collectively, "Defendants"). Also pending before the court is Plaintiff Secretary of the Department of Labor's ("Plaintiff" or "Secretary") *Instanter* Motion for Leave to File Sur-Reply to Defendants' Reply ("Sur-Reply Motion") (ECF No. 44) and Motion to Supplement, *Instanter*, Brief in Opposition ("Motion to Supplement") (ECF No. 53). For the following reasons, the court denies Defendants' Joint Motion for Partial Summary Judgment. The court also denies both Plaintiff's Sur-Reply Motion and Motion to Supplement.

## I. BACKGROUND

This case arises out of a dispute about the administrative fees related to a union-sponsored employee benefits plan that is subject to Title I of the Employment Retirement Income Security Act ("ERISA"). The United Transportation Union (the "UTU") was an employee organization, who represented transportation workers in collective bargaining matters. (Am. Compl. ¶ 4, ECF No. 39; Joint Mot. 2, ECF No. 32-1.) On January 1, 2010, the UTU sponsored the establishment of the UTU Group Voluntary Short Term Disability Plan ("UTU VSTD Plan") to provide short-term disability insurance benefits to participants of the plan. (Am. Compl. ¶ 5.) After the UTU merged with the Sheet Metal Workers' International Association ("SMWIA"), and formed a new entity known as International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART"), the UTU VSTD Plan was renamed the SMART Group VSTD Plan (Am. Compl. ¶¶ 7–8; Joint Mot. at 3.) The UTU VSTD Plan and its successor, the SMART Group VSTD Plan, are hereinafter collectively referred to as the "Plan." Since the material factual allegations against Defendants UTU, SMART, and the Transportation Division of SMART ("SMART-TD"), which was created shortly after SMART's formation, do not differ between the three entities with respect to the claims asserted in this pending Joint Motion, the court hereinafter refers to these Defendants collectively as the "Union."[1]

The Plan falls within the meaning of ERISA § 3(1), 29 U.S.C. § 1003(a), which is subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a). (*Id.*) To

[1] The Secretary states that its pre-litigation investigation suggests that representatives of these entities often use these labels interchangeably. (Am. Compl. at 3, n.2.) Defendants also self-refer to these entitles interchangeably. Defendants state that they have discussed entering into a stipulation with Plaintiff pursuant to Federal Rule of Civil Procedure 21, under which SMART would acknowledge that it is the successor to UTU, and the Secretary would dismiss UTU and SMART-TD as defendants in this action. (Joint Mot. at 3.)

participate, members of the Union authorize their employers to withhold a certain amount from their wages. (Am. Compl. ¶ 28; Joint Mot. at 7.) Four dollars of each participants' monthly withholding is allocated for administrative expenses related to the employee benefits plan ("Administrative Fees"). (Am. Compl. ¶ 36; Joint Mot. at 8.)

On May 5, 2017, Plaintiff, R. Alexander Acosta, Secretary of Labor, United States Department of Labor (the "Secretary"), pursuant to ERISA, filed a Complaint in the within case alleging that the Plan's administrators and trustees had violated provisions of Title I of ERISA by breaching their fiduciary duties. The named Defendants for the period of January 1, 2010 through December 31, 2013 ("Pre-2014 Period") are:[2] 1) UTU, who was the Plan sponsor and administrator from the Plan's inception until January 1, 2012 (Am. Compl. 13; Joint Mot. at 4); (2) SMART and SMART-TD who was the Plan sponsor and Plan administrator from January 1, 2012 to May 31, 2015 (Am. Compl. 14; Joint Mot. at 4); (3) John Previsich ("Previsich"), who has served as the President of SMART-TD since April 29, 2013 (Am. Compl. 16); (4) Joseph Nigro ("Nigro"), who became General President of SMART on July 1, 2011, and retired from the position on April 30, 2015. (Am. Compl. 20; Joint Mot. at 4.) The Secretary also joined the Plan as a defendant in this action pursuant to Federal Rule of Civil Procedure 19(a) to assure that complete relief can be granted. (Am. Compl. 12.)

The Secretary alleges that the Union, Previsich, and Nigro are fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). The Secretary contends that neither the

---

[2] The Secretary also claims certain alleged fiduciaries of the Plan violated Title I of ERISA during the period from January 1, 2014, through May 31, 2015. However, only violations of the Pre-2014 Period are the subject of the pending Joint Motion for Partial Summary Judgment.

Plan's administrators nor the Plan's trustees engaged in due diligence with respect to the reasonableness of the fee. (*Id.* ¶ 35.) In addition, the Secretary states that there was no agreement between the parties as to what the Union would charge the Plan for the provision of these services, or contemporaneous records detailing the administrative services provided to the Plan. (*Id.* ¶¶ 34, 39.) The Secretary also maintains that the Union did not ensure those administrative fees were limited to reimbursement of direct expenses that were actually and properly incurred as a result of providing administrative services to the Plan. (*Id.* ¶ 40.) Consequently, the Secretary claims that during their respective tenures as fiduciaries of the Plan, Defendants breached their fiduciary duties in violation of ERISA § 404(a)(1)(A)–(B), 405(a)(1)–(3), 406(a)(1)(C)–(D), 406(b)(1)–(2); 29 U.S.C. § 1104(a)(1)(A)–(B), 1105(a)(1)–(3), 1106(a)(1)(C)–(D), 1106(b)(1)–(2). (*Id.* ¶¶ 54–56.) The Secretary seeks to obtain appropriate equitable relief to redress violations and enforce provisions of Title I of ERISA.

On April 19, 2018, the Union, the Plan, Presivich, and Nigro (collectively, "Defendants") filed a Joint Motion for Partial Summary Judgment (ECF No. 32) for alleged violations of ERISA during the Pre-2014 Period.[3] Defendants argue that they cannot be considered fiduciaries under ERISA, and, accordingly, cannot be held liable for any fiduciary violations during the Pre-2014 Period. (*Id.*) The Secretary filed an opposition (ECF No. 37) in response to Defendants' Motion on June 19, 2018. Defendants replied (ECF No. 43) on July 17, 2018. On August 8, 2018, the Secretary filed an Instanter Motion for Leave to File Sur-Reply to Defendants' Reply, seeking to address three

---

[3] Although the Secretary alleges Nigro only became a fiduciary of the Plan beginning in January 2014, and thus, none of the Secretary's Pre-2014 Period claims apply to Nigro, Defendants state that Nigro joins this Motion to be sure that any dismissal of Plaintiff's Pre-2014 Period claims apply to Nigro as well. (Am. Compl. ¶ 20; Joint Mot. at 7.)

matters in Defendants' Reply Brief (ECF No. 44). Defendants filed their opposition to the Secretary's Sur-Reply Motion on August 10, 2018 (ECF No. 45). After a status conference with the court, the Secretary also filed a Motion to Supplement, Instanter, the Secretary's previous brief in opposition to Defendants' Joint Motion for Partial Summary Judgment on February 25, 2019 (ECF No. 53). On March 4, 2019, Defendants filed their opposition to the Secretary's Motion to Supplement (ECF No. 54).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *White v. Turfway Park Racing Ass'n, Inc.*,

909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 870 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment; it is not enough to show that there is slight doubt as to material facts." *Id*. (internal citations omitted). Moreover, "the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v.*

*J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

A court may grant summary judgment *sua sponte* to a non-moving party so long as the moving party "was on notice that she had to come forward with all of her evidence." *Celotex*, 477 U.S. at 326. Thus, if an issue was already raised and fully addressed by both sides, a court may grant summary judgment *sua sponte* to the non-moving party. *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380 (6th Cir. 2011).

## III. LAW AND ANALYSIS

ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) states, in relevant part:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or *disposition of its assets*, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to *any moneys or other property of such plan*, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

(emphasis added). In interpreting this provision, the United States Supreme Court has found that "[f]iduciary status under ERISA generally attends the management of 'plan assets.'" *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 89 (1993). Thus, Defendants argue that their alleged fiduciary statuses, and the Secretary's claim that Defendants violated fiduciary duties flowing therefrom, depend on the Secretary's ability to first establish that the funds in dispute, the Administrative Fees, are plan assets. (Joint Mot. at 13). Defendants contend that the Secretary cannot show that the Administrative Fees are fund assets. Furthermore, Defendants maintain that their responsibilities only amounted to Plan design, not Plan administration. (*Id*. at 21.) Accordingly,

Defendants assert that they cannot be considered fiduciaries of the Plan or held liable for fiduciary violations under ERISA. (*Id*. at 24.)

On the other hand, the Secretary argues that the Administrative Fees fall within the definition of plan assets as promulgated under Department of Labor Regulations. (Opp'n at 11.) Thus, the Secretary asserts that Defendants meet the definition of a fiduciary under ERISA and may be held liable for fiduciary violations under ERISA. (*Id*. at 1.) According to the Secretary, there are no genuine disputes of material fact as to whether the contributions from employees' wages were plan assets. (*Id*.) Therefore, the Secretary argues the court should deny Defendants' Joint Motion and instead grant summary judgment in the Secretary's favor. (*Id*.)

A. Plan Assets

ERISA does not define what constitutes "plan assets." *Voyk v. Bhd. of Locomotive Eng'rs*, 198 F.3d 599, 606 (6th Cir. 1999). Instead, the statute states that a plan asset is "defined by such regulations as the Secretary may prescribe." 29 U.S.C. § 1002(42). The Department of Labor has promulgated regulations that define plan assets in two contexts. *See* 29 C.F.R. § 2510.3–101, § 2510.3–102. One context describes what constitutes plan assets with respect to a plan's investment in other entities. 29 C.F.R. § 2510.3–101. Most relevant to this case is the other context, which is addressed in the provision titled , "Definition of 'Plan Assets'—Participant Contributions," 29 C.F.R. § 2510.3–102(a)(1). Under this regulation, plan assets include:

> amounts (other than union dues) . . . that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets.

Where neither context is applicable, plan assets are determined on the basis of ordinary notions of property rights. *See Secretary of Labor v. Doyle*, 675 F.3d 187, 203 (3d. Cir. 2012) ("[I]n the absence of specific statutory or regulatory guidance, the term 'plan assets' should be given its ordinary meaning, and therefore should be construed to refer to property owned by an ERISA plan.") (citing *In re Luna*, 406 F.3d 1192, 1199 (10th Cir. 2005)); Department of Labor Advisory Opinion 2005-08A ("The Department has indicated that the assets of an employee benefit plan generally are to be identified in other situations on the basis of ordinary notions of property rights.").

The Secretary maintains that the Administrative Fees should be considered plan assets pursuant to 29 C.F.R. § 2510.3–102 ("Plan Asset Regulation"), the regulation governing the definition of plan assets when a participant has withheld from his or her wages the amount to be contributed to the plan. (Opp'n at 12–13.) According to Defendants, the case does not arise out of either context contemplated by Department of Labor regulations, so the court should apply the ordinary notions of property test to determine whether the Administrative Fees constitute plan assets under ERISA. (*Id.*)

Although the court is unaware of any controlling precedent, the court finds that there is significant persuasive authority for finding that the whole amount that a participant of an employee benefit plan withholds from his or her wages constitutes plan assets under ERISA. In *Hi-Lex v. Blue Cross Blue Shield of Michigan*, the United States Court of Appeals for the Sixth Circuit considered whether the fees that a third-party administrator received from a combination of the employer's general funds and Hi-Lex employee contributions constituted "plan assets." 751 F.3d 740, 745 (6th Cir. 2014). Although the *Hi-Lex* court determined that the Plan Asset Regulation was inapplicable to fees that came from employer contributions, and thus applied the ordinary notions of property

rights test to those contributions, the court stated that the "health care contributions deducted from Hi-Lex employees' paychecks and sent to [the third-party administrator] to pay claims *and administrative costs* qualify as plan assets." *Id*. (emphasis added). Notably, the Sixth Circuit's determination considered the total amount withheld from the participants' wages to be plan assets, regardless of how the amount was to be divided between administrative costs or contributions toward health service claims. Similarly, in this case, the Administrative Fees represent a portion of the total amount that is withheld from a plan participant's paycheck. (Joint Mot. Ex. 19 at 3, ECF No. 32-21) ("[A] portion of your monthly payment is used for the administrative duties performed by UTU and not for VSTD insurance coverage.").[4] Applying the Hi-Lex court's logic, the entire amount withheld from a participant's wages would constitute plan assets.

Defendants focus on a narrower reading of the regulation and contend that the pertinent determination is instead whether the Administrative Fees should be considered a "contribution . . . to the plan." 29 U.S.C. § 2510.3–102. In support of the proposition that the Administrative Fees should not be considered a contribution to the plan, Defendants first point to the fact that "the Administrative Fees portion of the Assessments was specifically intended to be paid to the Union and were not intended to be used by the Plan."[5] (Joint Mot. at 10, 13) ("Since [the Union] receives the

---

4 The monthly rate that the Plan charged each participant was based on the occupation of the Union member and also varied based on the time period. (Am. Compl. ¶ 31). However, the monthly assessment appears to be inclusive of the Administrative Fees, regardless of variation in monthly rate. (*Id*. ¶ 32, 38.) For instance, Defendants note that in establishing the Plan, they determined that participants would withhold approximately $31.00 per month from their wages, and "[o]f the $31.00, $4.00 was earmarked for commissions and other administrative expenses incurred by [the Union] related to the program." (Joint Mot. at 9.)

5 There is some dispute between the parties as to whether the Union intended the Administrative Fees to be plan assets, and if that fact is even relevant. (Pl.'s Mot. to Supplement Opp'n, ECF No. 53; Def.'s Opp'n to Mot. to Supplement Opp'n, ECF No. 54.) As the court will discuss, *infra*, the facts in dispute are immaterial to the court's determination of whether the Administrative Fees are plan assets.

$4.00 directly, intended to cover the administrative costs of the plan, UTU will pay directly the administrative costs of the plan.") Defendants state that employers would send local union treasurers the lump sums that participants withheld from their wages, and then the treasurers would reconcile and apportion the funds as previously allocated. (Answer  11.) For instance, the Union charged a certain amount for administering the Plan, so the funds were used to pay for services provided to the plan by field supervisors and local union treasurers. (Joint Mot. at 1; Answer  36.) Second, Defendants argue that the Plan Document, that establishes and governs the Plan, plainly states that the "assets of the Plan shall not include any assets of UTU or its subordinate units that have not been contributed to [the Plan]." (Joint Mot. at 10; Joint Mot. Ex. 1 at 4, ECF No. 32-3.) Thus, Defendants contend that the Administrative Fees were not "a contribution . . . to the plan" and, therefore, cannot be construed as plan assets. (Reply at 13-14.)

Defendants' argument is unpersuasive. As discussed above, the plan design and intent of the plan's designers does not appear to figure into the Sixth Circuit's analysis of whether certain portions of an employee's contribution are considered plan assets. Instead, the Sixth Circuit's interpretation of the Plan Asset Regulation appears to hinge on the fact that an employee withheld an amount from their wages, and that the total amount was withheld for the general purpose of contributing to the plan. *See Hi-Lex v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 745 (6th Cir. 2014). The Sixth Circuit's emphasis on the amount withheld from employees' wages in determining plan assets also finds support in the Eleventh Circuit. In *United States v. Grizzle*, the United States Court of Appeals for the Eleventh Circuit upheld the conviction of an employer for embezzling funds that employees withheld from their paychecks for contribution to an employee benefit plan that was subject to ERISA. 933 F.2d 943, 949 (11th Cir. 1991). In reaching this decision, the Eleventh Circuit critically

determined that the employer was in possession of "plan assets," even though the employers had not contributed the amounts to the employee benefit plan. *Id*. at 947 ("Thus, the assets of employee benefit plans subject to ERISA include employee contributions to benefit plans which are withheld from employees' paychecks for deposit into their benefit plans, even though the contributions have not actually been delivered to the benefit plan."). Therefore, in a situation involving contributions from employees via paycheck withholdings, the Eleventh Circuit did not rely on when or whether the funds were deposited to the plan.

The court in *Grizzle* also relied on *Pension Benefit Guaranty Corporation v. Solmsen*, which "squarely rejected the . . . argument that the employee contributions were not 'plan assets' until they were contributed to the plan." *Id.* at 946–47 (citing 671 F. Supp. 938, 946 (E.D.N.Y. 1987)). Notably, the Department of Labor issued the Plan Asset Regulation subsequent to *Solmsen* to clarify the identification of plan assets. *Id*. Since *Solmsen*, courts have consistently held that the funds withheld from employees' wages for contribution to an employee benefit plan are plan assets, even if the amounts had not been remitted to the plan. *See, e.g.*, *United States v. LaBarbara*, 129 F.3d 81, 88 (2d Cir. 1997) (upholding conviction for theft of employee benefit fund "assets" because "[o]nce wages were paid to Local 66 members, [employer] had contractual obligations to the Funds that constituted 'assets' of the Funds by any common definition"); *Connors v. Paybra Mining Co.*, 807 F. Supp. 1242, 1246 (S.D.W.V. 1992) (finding "such outstanding or withheld contributions constitute plan assets"); *Galgay v. Gangloff*, 677 F. Supp. 295, 300–01 (M.D. Pa. 1987) (same). Finally, this analysis, of finding that funds constitute plan assets as soon as they are withheld from an employee's wages, also comports with "the remedial nature of ERISA as a whole," which "dictates that it should be liberally construed to protect participants in employee benefit plans." *Connors v. Paybra Mining*

*Co.*, 807 F. Supp. 1242, 1245 (S.D.W.V. 1992); *see also* 29 U.S.C. § 1001 (noting in the Congressional Findings and declaration of policy that one of purposes of ERISA is to "protect . . . the interests of participants in employee benefit plans and their beneficiaries.").

Thus, the court finds that the Administrative Fees are plan assets, pursuant to the Plan Asset Regulation, 29 U.S.C. § 2510.3–102, on the basis that the amounts withheld from employee wages included the Administrative Fees.

**B. Fiduciary Duty**

ERISA defines a fiduciary "not in terms of formal trusteeship, but in functional terms of control and authority over the plan. . . ." *Mertens v. Hewitt Assocs*., 508 U.S. 248, 262 (1993). Accordingly, the Sixth Circuit has held that it will not "extend fiduciary status to every person who exercises 'mere possession, or custody' over plans' assets." *Briscoe v. Fine*, 444 F.3d 478, 494 (6th Cir. 2006) (quoting *Chao v. Day*, 436 F.3d 234, 237 (D.D.C. 2006)). Instead, the court is required to undergo a functional analysis to determine whether a person "exercises any discretionary authority or discretionary control respecting management of such plan or . . . disposition of its assets," "renders investment advice" with respect to such plan, or "has any discretionary authority or discretionary responsibility in the administration of such plan," such that he or she would be considered a fiduciary under ERISA. 29 U.S.C. § 1002(21)(A); *Briscoe v. Fine*, 444 F.3d 478, 485-86 (6th Cir. 2006); *Hunter v. Caliber Sys., Inc*., 220 F.3d 702, 718 (6th Cir. 2000) ("[W]e must examine the conduct at issue to determine whether it constitutes 'management' or 'administration' of the plan, giving rise to fiduciary concerns, or 'merely a business decision that has an effect on an ERSIA plan' not subject to fiduciary standards."). The Sixth Circuit has followed the Second, Ninth, and Tenth Circuits in holding that parties who possess and use their power to write checks on a plan account exercise

control over plan assets and, therefore, are fiduciaries. *Briscoe v. Fine*, 444 F.3d 478, 494 (6th Cir. 2006) (citing *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1133–35 (10th Cir. 2005)); *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997); *IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415, 1417–21 (9th Cir. 1997)). The Sixth Circuit has also held that a person is a fiduciary when they exercise control by transferring assets. *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999) (holding that a bank removed as a trustee was a fiduciary after its removal because it still exercised control over plan assets by transferring assets). However, "where parties enter into a contract term at arm's length and where the term confers on one party the unilateral right to retain funds as compensation for services rendered with respect to an ERISA plan, that party's adherence to the term does not give rise to ERISA fiduciary status unless the term authorizes the party to exercise discretion with respect to that right." *Seaway Food Town, Inc., v. Med. Mut. of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003). Thus, an administrator who performs purely ministerial functions pursuant to a contract, such as processing claims, applying plan eligibility rules, communicating with employees, or calculating benefits, is not considered a fiduciary under ERISA. *Baxter v. C.A. Muer Corp*., 941 F.2d 451, 455 (6th Cir. 1991); *see also Pipefitters Local 636 Ins. v. Blue Cross Blue Shield*, 654 F.3d 618, 623 (6th Cir. 2011). In addition, the Department of Labor regulations promulgated under ERISA state that generally attorneys, accountants, actuaries, and consultants performing their normal functions will not be considered fiduciaries, unless the facts of the specific case demonstrate the person acted as a fiduciary. 29 C.F.R. § 2509.75-5; *see also Ferguson v. Beard Pension Servs*., No. 4:14CV01048, 2016 WL 1223271 (N.D. Ohio Mar. 29, 2016) (holding that the former plan actuary was not a fiduciary when he provided tax advice and compliance advice and instructions).

Because parties do not dispute that Defendants did not give any investment advice with respect to the Plan, the only remaining questions are whether Defendants exercised any authority or control over the management of the Plan or the disposition of its assets, or whether Defendants had any discretionary authority in the administration of the Plan that would subject Defendants to fiduciary duties.

The Secretary argues that Defendants exercised control over the plan assets and had discretionary authority in the administration of the Plan. (Opp'n at 20–22.) In particular, the Secretary asserts that Defendants had discretionary authority when they selected the field supervisors and local treasurers who would provide services to the Plan, when they decided how much they would compensate individuals for their services, and when they actually disbursed funds and compensated individuals for their services. (Opp'n at 22.) On the other hand, Defendants argue that they did not have discretionary authority or control in administering the fund. They point to one instance of discretion, which was when they decided that the Administrative Fee would be paid to the Union. (Joint Mot. at 24.) Defendants assert that this discretion was a settlor function, not a fiduciary function, because it occurred before the Plan existed. Thus, the determination that the Administrative Fees should be paid to the Union was plan design, not plan administration. (*Id.*) Accordingly, Defendants argue that they are not fiduciaries under ERISA.

The court finds Defendants' argument regarding its discretionary authority to establish the Administrative Fees to be irrelevant since Plaintiff only alleges breach of fiduciary duty with respect to the Administrative Fees after the Plan was established. However, Defendants have not presented sufficient evidence for the court to determine whether, and to what extent, Defendants' actions during the Pre-2014 Period are such that Defendants should not be considered fiduciaries. Despite the

court's finding that the Administrative Fees constitute plan assets, there are substantial arguments that Defendants' payment of field supervisors and local treasurers for administrative services, using funds that it billed from the Plan, is not necessarily determinative oif Defendants' fiduciary status. *See Briscoe v. Fine*, 444 F.3d 478, 489–91 (6th Cir. 2006) (determining that a third-party administrator was not an ERISA fiduciary because it did not have discretionary authority where it was "operated pursuant to an administrative services agreement that conferred upon it the responsibility for determining eligibility for benefits, [and] processing claims. . . ."); *Seaway Food Town Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 618–19 (6th Cir. 2003) (finding that a plan administrator was not a fiduciary over funds it retained to compensate itself because the compensation was bargained for and governed by contract, and not by the plan administrator's discretionary authority). On the other hand, there is also support for arguments to the contrary based on the facts that are currently before the court. *See Pipefitters Local 636 Ins. Fund v. Blue Cross and Blue Shield of Michigan*, 722 F.3d 861, 866–67 (6th Cir. 2013) (finding that an insurance company who contracted with the state to administer a health care plan and was expressly not named as a plan fiduciary, was an ERISA fiduciary nonetheless because it exercised discretionary authority in collecting and setting the rate of a non-contractually obligated fee that it charged to customers); *Briscoe v. Fine*, 444 F.3d 478, 492 (6th Cir. 2006) (holding that serving as a signatory to a fund and the ability to unilaterally dispose of remaining funds is sufficient evidence to demonstrate that a third-party administrator exercised control over a company's health plan assets).

Because the court is required to make a determination based on the facts, the court finds, as currently presented, that there are genuine disputes of material fact in regard to whether Defendants are fiduciaries under ERISA. For instance, Defendants have not described the duties of each

Defendant with the specificity that would allow the court to determine whether he or she is a fiduciary. Thus, the court denies Defendants' Motion for Summary Judgment. Finally, to the extent that the Secretary argues that the court should instead grant summary judgment in its favor *sua sponte*, the court declines to do so. Not only are there outstanding disputes of material fact with respect to whether Defendants are fiduciaries under ERISA, but the Secretary has yet to advance evidence-based arguments that Defendants breached alleged fiduciary duties.

## IV. PLAINTIFF'S SUR-REPLY MOTION AND MOTION TO SUPPLEMENT

Plaintiff's Sur-Reply Motion seeks leave to file a sur-reply to address three matters in Defendants' Reply Brief, which Plaintiff claims were "new submissions and/or arguments" that he could not address in his Response in Opposition to Defendants' Joint Motion for Partial Summary Judgment. (Sur-Reply Mot. 1, ECF No. 44.) The court, in its discretion, finds that the matter was fully briefed and that it was unnecessary to consider Plaintiff's sur-reply, which contained arguments that had already been presented in its Response in Opposition. Accordingly, the court denies Plaintiff's Sur-Reply Motion.

Similarly, the court denies Plaintiff's Motion to Supplement. As discussed above, the matter was fully briefed after Defendants filed their Reply. The arguments for which Plaintiff sought to supplement with additional evidence already had evidentiary support in Plaintiff's Response in Opposition. Thus, it was unnecessary for the court to consider additional evidence. Consequently, the court denies Plaintiff's Motion to Supplement.

## V. CONCLUSION

For the foregoing reasons, the court denies Defendants' Joint Motion for Partial Summary Judgment (ECF No. 32). The court also denies Plaintiff's Sur-Reply Motion (ECF No. 44) and Motion to Supplement (ECF No. 53).

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

March 26, 2019